**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**MATTHEW PATTERSON,** )<br>)<br>**Defendant.** ) | **8:07CR159**<br><br>**REPORT AND**<br>**RECOMMENDATION** |

This matter is before the magistrate judge on defendant's Motion to Dismiss Indictment [16][1]. Oral argument was held on August 21, 2007, at which time the motion was deemed submitted.

The defendant was indicted on one count of failure to register as a sex offender in the State of Nebraska, as required by the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250(a). Defendant argues that the indictment must be dismissed because (a) SORNA violates the *ex post facto* clause of the U.S. Constitution; (b) Congress lacked the authority under the Commerce Clause to enact SORNA's registration requirements or § 2250 because the statute does not regulate interstate commerce; (c) the indictment violates the due process clause because defendant had no knowledge of SORNA's registration requirements at the time the conduct occurred; (d) it is a violation of the 10th Amendment for Congress to compel the states to accept registrations from federally mandated sex offender programs; and (e) Congress allowed the Attorney General to legislate the scope of SORNA's retrospective reach in violation of the non-delegation doctrine.

---

[1]Oral argument on the motion for dismissal (Filing 16, part 1) was combined with an evidentiary hearing on the motion to suppress evidence (Filing 16, part 2). The suppression motion was ultimately denied by Judge Bataillon on September 14, 2007. This Report and Recommendation pertains only to the remaining motion for dismissal.

For the reasons discussed herein, I recommend that the motion be granted.

## FACTUAL BACKGROUND

During the August 21, 2007 hearing, no evidence was offered regarding defendant's Motion to Dismiss. These facts, taken from the parties' briefs, appear to be uncontested.

On February 20, 2004, Matthew Patterson was convicted in New York of sexual contact with an individual under 17 and was sentenced to six years of probation. As a result of his conviction, Patterson was determined to be a Level 2 Sex Offender, requiring him to register as a sex offender in the State of New York.

On July 6, 2004, Patterson registered as a sex offender in Clinton County, New York, listing his address as the Chateau Motel in Plattsburgh, New York. On the initial registration form, Patterson acknowledged he read the back of the form which gave instructions on completing it and also outlined the specific duties of a sex offender in accordance with New York State Correction Law Article 5-C. Among the duties listed was one that addressed offenders' obligation to notify the state to which they move should that occur. The notice read as follows: "If you move to another state, you must register as a sex offender within ten (10) days of establishing residence. You must also register in any state in which you are employed or are a student." By signing and dating the form on July 6, 2004, Patterson acknowledged he read the back of the form and understood he had a duty to register and his duties were explained to him.

On September 20, 2004, Patterson moved out of the Chateau Motel, but did not report a change of address with the Clinton County Sheriff's Department or the New York State Sex Offender Registry. In late 2004, Patterson moved from New York to Lincoln, Nebraska, where he was employed at Tyson Foods from November 2004 until January 2005. In 2005, he was charged

in Plattsburgh, New York with failing to register as a sex offender (first offense). He returned to New York in 2005, pled guilty and was sentenced to a period of incarceration for failure to register (first offense).

On March 5, 2005, Patterson completed a Sex Offender Change of Address Form to update his address from Lincoln, Nebraska to the Clinton County Jail in Plattsburgh, New York. On March 16, 2005, however, Patterson fulfilled his sentence and was released from the Clinton County Jail. He failed to report a new change of address within 10 days, as required by New York law. On July 6, 2005, an annual verification form was sent to Patterson at the Clinton County Jail, his last reported address. Because he was no longer incarcerated at the facility, a warrant for Patterson's arrest for failure to register (second offense) was issued and is currently active in New York.

Following his release from the Clinton County Jail, Patterson returned to Nebraska. In June of 2005, Patterson was arrested in Hastings, Nebraska and listed a home address in Hastings, Nebraska. Apparently, Patterson was arrested again in Adams County in 2005. There is currently an active warrant for Defendant's arrest in Adams County, Nebraska.

Between 2005 and 2007, Patterson moved back and forth between Nebraska and Iowa. On April 17, 2007, Patterson was indicted in this district for a violation of 18 U.S.C. § 2250(a). He was arrested on April 29, 2007 in Iowa City, Iowa, on the warrant issued in the instant case. During an interview on May 18, 2007, Patterson informed law enforcement he has traveled back and forth between Iowa and Nebraska during 2006 and 2007 and last crossed the border into Nebraska in January 2007.

The indictment alleges:

From on and before June 2005 and continuing until at least February 2007, in the District of Nebraska, MATTHEW R. PATTERSON, having previously been convicted in the State of New York of an offense requiring him to register as a sex offender, to-wit: Sexual Abuse in the Second Degree, traveled in interstate commerce to Nebraska, and knowingly failed to register as a sex offender in the State of Nebraska, where he resided, as required by the Sex Offender Registration and Notification Act. In violation of Title 18, United States Code, Section 2250(a).

## LEGAL ANALYSIS

Since 1994, pursuant to the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act ("Jacob Wetterling Act"), federal law has required sex offenders to register their addresses with state law enforcement for a minimum period of 10 years after release from prison. 42 U.S.C. § 14071(b)(6). Under the Jacob Wetterling Act, which is still in effect, the first time a sex offender knowingly fails to register is deemed a misdemeanor with a potential sentence of up to one year imprisonment. For a second offense, a sex offender faces up to ten years imprisonment. 42 U.S.C. § 14072(i).

The Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), Pub. L. 109-248, 120 Stat. 587, was enacted July 27, 2006. Title I of the Adam Walsh Act consists of the Sex Offender Registration and Notification Act ("SORNA"), which sets new federal registration requirements for sex offenders:

> **(a)  In general**
> A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.
>
> **(b)  Initial registration**
> The sex offender shall initially register–
> > (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

>    (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.
>
> **(c)  Keeping the registration current**
> A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.
>
> **(d)  Initial registration of sex offenders unable to comply with subsection (b) of this section**
> *The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction*, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.
>
> **(e)  State penalty for failure to comply**
> Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.

Pub. L. 109-248, Title I, § 113, 120 Stat. 593 (2006), codified at 42 U.S.C. § 16913 (Emphasis added).

SORNA included new federal criminal penalties for failing to register as a sex offender, providing for a maximum penalty of 10 years imprisonment:

>    (a)  In general.– Whoever–
>
>    (1) is required to register under [SORNA];
>
>    (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

>    (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
>
>    (3) knowingly fails to register or update a registration as required by [SORNA];
>
> shall be fined under this title or imprisoned not more than 10 years, or both.

Pub. L. 109-248, Title I, § 141(a)(1), 120 Stat. 602 (2006), codified at 18 U.S.C. § 2250(a). Pursuant to SORNA, the Jacob Wetterling Act will be automatically repealed either three years after July 27, 2006 or one year after the date on which certain internet software becomes available, whichever is later.[2]

Not until February 28, 2007, however, did the U.S. Attorney General issue an interim rule[3] pursuant to 42 U.S.C. § 16913(d) announcing that SORNA applies to sex offenders convicted before enactment of SORNA of an offense for which registration is required. *See* 72 F.R. 8894-01, 2007 WL 594891, codified at 28 C.F.R. § 72.3. Thus, courts throughout the country have been faced with the problem of the gap in time between the enactment of SORNA on July 27, 2006 and the Attorney General's announcement on February 28, 2007 that the requirements of SORNA apply retroactively to sex offenders convicted of the offense for which registration is required prior to the enactment of SORNA.

In reaching my conclusion that Mr. Patterson's motion for dismissal should be granted, I have considered the arguments presented in the following cases, all involving some aspect of the seven-month gap between SORNA's enactment and the date of the Attorney General's interim rule:

---

[2] The Attorney General may authorize up to two 1-year extensions of the deadline. 42 U.S.C. § 16924.

[3] The interim rule states that it "serves the narrow[], immediately necessary purpose of foreclosing any dispute as to whether SORNA is applicable where the conviction for the predicate sex offense occurred prior to the enactment of SORNA."

*United States v. Mitchell*, 2007 WL 2609784, No. 07CR20012 (W.D. Ark., Sept. 6, 2007) (indictment not dismissed)

*United States v. Sawn*, 2007 WL 2344980, No. 6:07cr00020 (W.D. Va. Aug. 15, 2007) (indictment not dismissed)

*United States v. Roberts*, 2007 WL 2155750, No. 6:07-CR-70031 (W.D. Va., July 27, 2007) (indictment not dismissed)

*United States v. Kelton*, 2007 WL 2572204, No. 5:07-cr-30 (M.D. Fla., Sept. 5, 2007) (indictment not dismissed)

*United States v. Gonzales*, 2007 WL 2298004, No. 5:07cr27 (N.D. Fla., Aug. 9, 2007) (indictment not dismissed)

*United States v. Mason*, 2007 WL 1521515, No. 6:07-cr-52 (M.D. Fla., May 22, 2007) (indictment not dismissed)

*United States v. Hinen*, 487 F. Supp. 2d 536 (W.D. Va. 2007) (indictment not dismissed)

*United States v. Templeton*, 2007 WL 445481, No. CR-06-291-M (W.D. Okla., Feb. 7, 2007) (indictment not dismissed)

*United States v. Madera*, 474 F. Supp. 2d 1257 (M.D. Fla. 2007) (indictment not dismissed)

*United States v. Manning*, 2007 WL 624037, No. 06-20055 (W.D. Ark., Feb. 23, 2007) (indictment not dismissed)

*United States v. Stinson*, — F. Supp. 2d —–, 2007 WL 2580464, No. 3:07-00055 (S.D. W. Va., Sept. 7, 2007) (defendant acquitted after bench trial)

*United States v. Dillenbeck*, 2007 WL 2684838, No. 4:07-cr-213, (D.S.C., Sept. 7, 2007) (indictment dismissed)

*United States v. Muzio*, 2007 WL 2159462, No. 4:07CR179 (E.D. Mo., July 26, 2007) (indictment dismissed)

*United States v. Heriot*, 2007 WL 2199516, No. 3:07-323 (D.S.C., July 27, 2007) (indictment dismissed)

*United States v. Barnes*, 2007 WL 2119895, No. 07-cr-187 (S.D.N.Y., July 23, 2007) (indictment dismissed)

*United States v. Marvin Smith*, 2007 WL 1725329, No. 2:07cr-00082, (S.D. W. Va., June 13, 2007) (indictment dismissed)

*United States v. Kapp*, 487 F. Supp. 2d 536 (M.D. Pa. 2007) (indictment dismissed)

*United States v. Bobby Smith*, 481 F. Supp. 2d 846 (E.D. Mich. 2007) (indictment dismissed)

Having considered all these authorities, the court believes that the dispositive factor in this matter is the delay between the enactment of SORNA, which established a possible 10-year sentence of imprisonment for a first offense for failure to register, and the delay in announcing that persons convicted of a sex offense prior to SORNA's enactment were subject to this penalty.

With any question involving statutory construction, the court looks first to the text of the statute itself. *See, e.g., United States v. Sabri*, 326 F.3d 937, 942 (8th Cir.), *cert. granted*, 540 U.S. 944 (2003), *aff'd & remanded*, 541 U.S. 600 (2004). If the text of a statute is unambiguous, the statute should be enforced as written, and only the most extraordinary showing of contrary intentions in the legislative history will justify a departure from that language. *Id.* at 943. In construing statutes, courts should avoid constitutional questions where possible. *See id.* at 944.

With these principles in mind, this court finds the decisions in *United States v. Muzio*, 2007 WL 2159462, No. 4:07CR179 (E.D. Mo., July 26, 2007), *United States v. Kapp*, 487 F. Supp. 2d 536 (M.D. Pa. 2007), and *United States v. Stinson*, — F. Supp. 2d —–, 2007 WL 2580464, No. 3:07-00055 (S.D. W. Va., Sept. 7, 2007), to be the most logical and persuasive.

In both *Muzio* and *Stinson*, the defendants were convicted of sex offenses prior to SORNA's enactment, but traveled in interstate commerce between the date of SORNA's enactment and the date of the Interim Rule. Muzio moved to dismiss the indictment, raising many of the issues that have been raised in the case at bar. The district court found that the indictment must be dismissed, because Muzio, at the time of his alleged criminal act, was not covered by SORNA, and so its application to him violated the ex post facto clause of the United States Constitution. *Muzio*, 2007 WL 2159462 at *1. The court specifically rejected the government's argument (which has also been made in this case), that 42 U.S.C. § 16913(d) pertained only to prior sex offenders who were not able to *initially* register within the time limits specified in SORNA:

> The problem with the government's argument is that it ignores the ordinary rules of statutory construction. Under the plain language of the statute, the registration requirements of § 113(a) [42 U.S.C. § 16913(a)] have only prospective applicability until the Attorney General acted pursuant to § 113(d) [42 U.S.C. § 16913(d)]. Section 113(d) unequivocally authorizes the Attorney General to "specify the

-8-

applicability" of SORNA to offenders who, like Muzio, were convicted of predicate sex offenses before SORNA's effective date of July 27, 2006. "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979).  Only the title raises any question about § 113(d)'s meaning.  But a title does not make a statute ambiguous when the words are plain: "section and subchapter titles cannot alter the plain meaning of a statute; they can only assist in clarifying ambiguity." *Minnesota Transp. Regulation Board v. United States*, 966 F.2d 335, 339 (8th Cir. 1992) (citing *Brotherhood of Railroad Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 528-29 (1947)).  *See also Reed v. Sturdivant*, 176 F.3d 1051, 1053 n.4 (8th Cir. 1999) ("Headings are usually given little weight in construing a statute but may be used to clarify an ambiguity."). The Supreme Court has discussed the effect of section titles on statutory interpretation:

> That the heading of [the section] fails to refer to all the matters which the framers of that section wrote into the text is not an unusual fact. That heading is but a short-hand reference to the general subject matter involved.... [H]eadings and titles are not meant to take the place of the detailed provisions of the text.  Nor are they necessarily designed to be a reference guide or a synopsis.  Where the text is complicated and prolific, headings and titles can do no more than indicate the provisions in a most general manner; to attempt to refer to each specific provision would often be ungainly as well as useless.  As a result, matters in the text which deviate from those falling within the general pattern are frequently unreflected in the headings and titles.  Factors of this type have led to the wise rule that *the title of a statute and the heading of a section cannot limit the plain meaning of the text*.  For interpretive purposes, they are of use only when they shed light on some ambiguous word or phrase.  They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain.
>
> *Brotherhood of Railroad Trainmen*, 331 U.S. at 528-29 (citations omitted) (emphasis added).

*Muzio*, 2007 WL 2159462 at *3-4.  *Cf. United States v. Lanier*, 520 U.S. 259, 267 n.6 (1997) ("The legislative intent of Congress is to be derived from the language and structure of the statute itself, if possible, not from the assertions of codifiers directly at odds with clear statutory language.").  The *Muzio* court, 2007 WL 2159462 at *4, adopted the statutory interpretation used in *United States v. Kapp*:

> [A] careful reading of § 113(d) reveals that its reach extends beyond establishing the means by which unregistered sex offenders must first register. Section 113(d) comprises two clauses. The first clause ... authorizes the Attorney General to "specify the applicability" of SORNA to past offenders. The second clause, authorizes the Attorney General to promulgate regulations related to the registration of sex offenders under SORNA. Although the first clause speaks to "sex offenders convicted before the enactment of this Act or its implementation in a particular jurisdiction," the second clause provides authority to promulgate regulations "for the registration of any such [previously convicted] sex offenders and for other categories of sex offenders who are unable to comply with subsection (b)." The words "any such" and "other categories" in the second clause indicate that § 113(d) contemplates two groups of sex offenders: (1) past offenders and (2) those unable to initially register under subsection (b). Significantly, the first clause of § 113(d), which addresses SORNA's applicability, only covers the first group: past offenders. Therefore, when the two clauses are read in conjunction, the first clause of § 113(d) unambiguously provides the Attorney General with the authority to define the retrospective applicability of SORNA's registration requirements to past offenders.

*United States v. Kapp*, 487 F. Supp. 2d 536, 542 (M.D. Pa. 2007). *See also United States v. Stinson*, 2007 WL 2580464 at *6 n.9.

SORNA unambiguously delegated to the Attorney General the task of specifying the applicability of SORNA's registration requirements to sex offenders convicted before July 27, 2006. In other words, the legislation "required the Attorney General to animate SORNA's provisions to previously convicted offenders." *United States v. Kapp*, 487 F. Supp. 2d at 542. The necessary specification was not made until February 28, 2007. While it is true that Patterson may have had an independent obligation to register under state law or under the Jacob Wetterling Act during the time alleged in the indictment, this court concludes that the registration requirements of SORNA did not apply to defendant Patterson until the Attorney General made the necessary specification on February 28, 2007.[4]

---

[4] The indictment alleges that the defendant traveled in interstate commerce and failed to register "from on and before June 2005 and continuing until at least February 2007." Failure to register, in violation of SORNA, is not a continuing offense. A violation of 18 U.S.C. § 2250(a) occurs "on the 11th day after the

This court also agrees that the offense charged, as applied to the facts of his case, is in violation of the ex post facto clause of the United States Constitution.[5]  The ex post facto clause

> forbids the Congress and the States to enact any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." ... Through this prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed.... The ban also restricts governmental power by restraining arbitrary and potentially vindictive legislation....
>
> In accord with these purposes, our decisions prescribe that two critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.... [A] law need not impair a "vested right" to violate the ex post facto prohibition.  Evaluating whether a right has vested is important for claims under the Contracts or Due Process Clauses, which solely protect pre-existing entitlements....  The presence or absence of an affirmative, enforceable right is not relevant, however, to the ex post facto prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred. Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.

*Weaver v. Graham*, 450 U.S. 24, 28-31 (1981) (footnotes and citations omitted).  *Accord United States v. Stinson*, 2007 WL 2580464 at *4; *United States v. Muzio*, 2007 WL 2159462 at *6; *United States v. Bobby Smith*, 481 F. Supp. 2d at 851.

Lacking the Attorney General's determination, which was not announced until February 28,

---

defendant travels in interstate commerce from one jurisdiction to another, and fails to register after 10 days. It is not a continuing offense where an individual can be prosecuted separately for each day he fails to register after the 10th day."  *United States v. Bobby Smith*, 481 F. Supp. 2d 846, 852 (E.D. Mich. 2007).

[5]Article I, § 9, cl. 3 of the United States Constitution states, "No Bill of Attainder or ex post facto law shall be passed."

2007, a person convicted of a sex offense before the enactment of SORNA was not put on notice that he/she could be sentenced to 10 years in prison for conduct that has been punishable only as a misdemeanor since 1994 pursuant to the Jacob Wetterling Act–which is still in effect. In this instance, the enhanced penalty did not exist at the time Patterson allegedly violated SORNA. As in *Muzio*, defendant Patterson's "'gap' situation presents a classic Ex Post Facto Clause violation," although there is no constitutional problem with prosecuting persons other than those who traveled and failed to register during the gap. With respect to SORNA, an ex post facto clause violation occurs only when applied to those previously-convicted persons who traveled in interstate commerce before the Attorney General's interim rule was announced. Furthermore, Patterson's alleged failure to register during the time period in question is still punishable under other state and federal statutes.

## RECOMMENDATION

In construing statutes, courts should avoid constitutional questions where possible. *United States v. Sabri*, 326 F.3d at 944. Because the court finds that SORNA did not apply to the conduct alleged in the indictment, dismissal is recommended on that ground and it is not necessary to specifically address the parties' other constitutional arguments.

**IT IS RECOMMENDED** that defendant's Motion to Dismiss Indictment [16] be granted.

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing an "Objection to Report and Recommendation" within ten (10) business days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.

**DATED September 21, 2007.**

                        **BY THE COURT:**

                        **s/ F.A. Gossett**
                        **United States Magistrate Judge**